IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AHMAD WILLIAMS, MALAIKA WILLIAMS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-354 |
| | : | |
| RENT 2 OWN TRAILERS, LLC, GABRIEL ARGUELLO, FEDERICO ARGUELLO, BIANEY CORDOVA, IVAN SERNA, ADRIANA CHUEY, VICKY, ARGUELLO INSURANCE GROUP, JACOBO ARGUELLO, NATALIA RUIZ, NAUTILUS INSURANCE | : | |

# **MEMORANDUM**

**MURPHY, J.**                                                                                           February 4, 2025

This case involves a business arrangement to lease two food trailers, which has spiraled into accusations of fraud, racketeering, conspiracy, and deceptive practices. The pro se plaintiffs allege that Mr. Williams's signature was forged on the final versions of the lease agreements, and that he was misled about the trailers' value and other financial terms as part of a scheme to ruin his business and repossess the trailers. But before we can get to all that, we must decide whether the the rental agreements' forum selection clauses warrant transferring the case to Texas. The Williamses do not want to litigate in Texas, but they cannot overcome Mr. Williams's agreement to do so. Even if Mr. Williams's signature were forged on some agreements, he admits others were genuine. And the Williamses do not dispute the validity of the forum selection clause itself. Nor are there sufficient countervailing reasons to maintain some or all of the case here. Therefore, consistent with the forum selection clause, we transfer the entire case to the United States District Court for the Southern District of Texas, Houston Division.

I.   **Background**

Plaintiff Ahmad Williams contracted with Rent 2 Own Trailers, LLC ("R2O") to lease two food trailers for his new business venture. Each iteration of the agreements contains a forum selection clause requiring that disputes be resolved in "Houston, Harris County, Texas." DI 27 at 11, 27, 43, 59, 75, 89. Plaintiffs[1] allege, in short, that R2O breached the agreements by failing to provide updated registration stickers and engaging in fraudulent conduct, such as inflating the value of the trailers, altering financial terms without consent, and unlawfully repossessing the trailers. *See* DI 32 ¶¶ 30-130. They further claim that Nautilus Insurance Company ("Nautilus") and Western Security Surplus Insurance Brokers, LLC ("WSS") participated in a broader scheme to inflate insurance premiums and conceal key information about coverage and valuations. *See, e.g.,* DI 32 ¶¶ 43, 49, 50.

Three groups of defendants[2] have brought separate motions to dismiss:

1. R2O; Federico Arguello; Gabriel Arguello; Jacobo Arguello; Ivan Serna; Adriana Chuey; Vickey Pirela; and Arguello Insurance Group (collectively, "the R2O defendants") filed a motion seeking dismissal under Rule 12(b)(2), Rule 12(b)(3), Rule

---

[1] Plaintiff Maliaka Williams did not sign the operative complaint, but she is identified as a plaintiff in the caption. *See* DI 32 at 1, 85. She asserts a claim for loss of consortium arising from the fallout of Mr. Williams's failed business venture. *Id.* at 83-84. Because the forum selection clause in the rental agreements necessitates transferring this case, we will defer addressing the issue of whether she is a properly joined plaintiff. For now it is enough that Ms. Williams signed the responsive briefs to the present motions, so "plaintiffs" refers to both Mr. and Ms. Williams.

[2] Two defendants were originally unaccounted for when these motions became ripe, Bianey Cordova and Natalie Ruiz, but both have since been dismissed for failure to prosecute. *See* DI 64. We have left them out of our analysis as they are no longer parties to this case.

12(b)(6), and 28 U.S.C. § 1406(a) or, alternatively, transfer of the case to Texas under 28 U.S.C. § 1404(a) based on the forum selection clause contained in the rental agreements between R2O and Mr. Williams. *See* DI 34 at 10-11, 22-23, 38. They argue that the clause governs all claims arising from the agreements and is enforceable.

2. Nautilus seeks dismissal under Rule 12(b)(6), asserting that plaintiffs fail to plead fraud, conspiracy, or other tortious conduct with the required specificity. *See* DI 35 at 15-18.

3. WSS and Kay Campbell seek dismissal under Rule 12(b)(6), arguing that plaintiffs do not allege their direct involvement in the alleged misconduct. *See* DI 49 at 8-10.

In response, plaintiffs challenge the enforceability of the rental agreement as a whole, alleging that Mr. Williams's signatures were forged on the third iteration of the agreement. Plaintiffs also claim that "the contract was one of adhesion," because Mr. Williams was not a "sophisticated businessman" at the time of signing. DI 39 ¶ 49. Importantly, the complaint and attached documents show,[3] and Mr. Williams does not dispute, that he signed earlier versions of the agreement. Further, plaintiffs allege that only the financial terms were altered between versions, leaving the forum selection clause unchanged throughout the contracting process.

## II.   Analysis

We address only the transfer motion presented by the R2O defendants in our analysis. In the interest of judicial efficiency, we exercise our discretion to bypass the issues of personal

---

[3] Mr. Williams's first and second complaints attached copies of the rental agreements. *See* DI 1-1; DI 27. When Mr. Williams filed the operative third amended complaint, he did not attach them. However, because Mr. Williams is *pro se* and all parties point to these agreements without objection, we assume that the failure to attach the exhibits was inadvertent and we will consider them in this motion.

3

jurisdiction or improper venue under § 1406(a). *See SPCK USA, Inc. v. Precision Couplings, LLC*, No. 18-10256, 2019 WL 102412, at *4 (D.N.J. Jan. 4, 2019) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)). We assume *arguendo* that we have personal jurisdiction over the defendants and move directly to a consideration of whether transfer is appropriate under § 1404(a). *See id.* at *4 n.4. Our analysis first examines the motion to transfer under § 1404(a) as it pertains to the contracting parties, then considers its impact on the non-contracting parties.

### A. The contracting parties: Mr. Williams and R2O

"When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63-64 (2013). We "must honor the forum-selection clause '[i]n all but the most unusual cases.'" *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 397 (3d Cir. 2017) (quoting *Atl. Marine*, 571 U.S. at 66). Accordingly, a forum selection clause guides our analysis for whether transfer of venue under §1404(a) is proper. *Atl. Marine*, 571 U.S. at 63-64. First, we must determine whether the forum selection clause is enforceable. *Id.* Second, if the forum selection clause is enforceable, we may consider arguments about public interest factors, which will very rarely trump a valid forum selection clause. *Atl. Marine*, 571 U.S. at 64. Third, if public interest considerations do not preclude enforcement, we must determine whether, under state contract law, the claim at issue falls within the clause's scope. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180-81 (3d Cir. 2017).

#### a. Enforceability

"Federal law controls the question of whether to enforce a forum selection clause." *In re*

4

*McGraw-Hill Glob. Educ, Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018). The party opposing enforcement of a forum selection clause bears a "heavy burden of proof." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-19 (1972). We must enforce a forum selection clause unless plaintiffs demonstrate "either that the forum thus selected is 'so gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court,' . . . or that the clause was procured through 'fraud or overreaching,'" *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (emphasis removed) (quoting *M/S Bremen*, 407 U.S. at 15, 18).

Plaintiffs argue that the forum selection clause is unenforceable because it was procured by "fraud in the form of forgery," DI 39 ¶ 11, and "overreaching bargaining power," *id.* ¶ 22, and because it is unconscionable, *id.* ¶ 23.

A forum selection clause is unenforceable only if plaintiffs make a "'strong showing' that the clause was procured through 'fraud or overreaching.'" *Foster*, 933 F.2d at 1219. The specific inquiry is whether the clause itself — not the broader contract — was fraudulently induced. *MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 847 (3d Cir. 2003) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)); *see also Minnebo v. Metal Supermarkets Franchising Am. Inc.*, 2024 WL 1928458 (D.N.J. Apr. 30, 2024) (reasoning that "a forum selection clause is unenforceable due to fraud 'only where assent to the clause itself, as opposed to the contract as a whole, is the product of fraud or coercion'"); *Andesa Servs., Inc. v. Life*, 2024 WL 3291624 (D. Del. Mar. 8, 2024) (holding that a forum selection clause was enforceable despite allegations of fraudulent inducement "to sign the Master Services Agreement" when there was no basis "to find the forum selection clause

5

itself is a product of fraudulent inducement").

Plaintiffs allege that defendant Federico Arguello forged Mr. Williams's signature on the *third* iteration of the contracts. DI 39 ¶ 11. However, the only modification alleged between the second and third iterations of the contract was an "alteration in pricing." DI 32 ¶ 16. The forum selection clause remained unchanged in all iterations, and plaintiffs admit consenting to the first and second versions, which contained the same clause. *See* DI 27 at 11, 27, 43, 59, 75, 89; DI 32 ¶ 16. Accordingly, at most, plaintiffs allege the third iteration of the contracts are fraudulent as a whole, and do not challenge the forum selection clause specifically. As a result, their arguments fail. *See MoneyGram,* 65 F. App'x at 847. Moreover, even if Mr. Williams's signature was were forged on the third iteration, the second iteration — containing the identical forum selection clause — would control. Thus, plaintiffs fail to make a "strong showing that the *clause* was procured through fraud." *Foster*, 933 F.2d at 1219 (emphasis added) (quotations omitted).[4]

Next, plaintiffs contend that the clause is unenforceable due to overreach, citing a disparity in bargaining power and an inability to negotiate contract terms.[5] *See* DI 39 ¶ 22. Plaintiffs suggest that they were unable to negotiate fairly because the contract was one of adhesion, and Mr. Williams had to pay a fee before seeing the contract. First, a lack of "actual

---

[4] Plaintiffs argue "the forged contracts time stamp, labeled as attachments F & G in complaint, are identical to the final contracts previously signed by Plaintiff A.W., labeled as attachments D & E. That would have been impossible if the documents were not forged." DI 39 ¶ 11. It is not clear to us why the contacts being stamped with identical times "would have been impossible if the documents were not forged." *Id.*

[5] Plaintiffs cite Pennsylvania state law in their arguments. Federal law applies to the question of if a forum selection clause is enforceable. *In re McGraw-Hill*, 909 F.3d at 58.

negotiations over the clause does not affect its validity." *Foster*, 933 F.2d at 1219. Second, we are unconvinced that the forum selection clause is unenforceable just because Mr. Williams allegedly had to pay an upfront fee to see the contract. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594-95 (1991) (finding forum selection clause on back of cruise ticket, only available to consumers after purchase from a large corporation, enforceable despite lack of bargaining over terms of clause). Mr. Williams voluntarily paid the pre-contract fee to see the contract, and we cannot see any reason why this would preclude him from later rejecting the contract.

Plaintiffs also assert that the contract is unconscionable because its terms favor R2O. DI 39 ¶ 26. But they do not claim that the forum selection clause itself is unconscionable, which is the controlling inquiry. *See Feite v. Neumann*, No. 19-4280, 2020 WL 670135, at *3 n.23 (E.D. Pa. Feb. 11, 2020) (explaining that failure to "demonstrate[] that [the] inclusion of the forum selection clause itself in the agreement was the product of fraud or overreaching" was dispositive (citing *MoneyGram,* 65 F. App'x at 847)).

Finally, plaintiffs do not make a "strong showing" that litigation in Texas would be so "gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court." *Foster*, 933 F.2d at 1219. At most, plaintiffs state that litigation in Texas would be "financially inconvenient" and that certain witnesses reside in Pennsylvania. DI 39 ¶ 53; *see also* DI 32 ¶ 12. But as plaintiffs acknowledge, these are private interest factors related to the convenience of fourm. *Id.* (listing "private factors"). Such private-interest concerns are insufficient to override a forum selection clause, which waives consideration of private factors. *Foster*, 933 F.2d at 1219 ("Chesapeake admits that by the [forum selection] clause it waived any

7

claim to inconvenience of forum.").

Accordingly, we find that plaintiffs' arguments against enforceability are unavailing, and the forum selection clause is valid.

### b. Public interest

Because we have determined that the forum selection clause is valid, we "may consider arguments about public-interest factors only," as private interests, including the convenience of the parties, "weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64. The relevant public interest factors include "the enforceability of the judgment; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *In re Howmedica*, 867 F.3d at 402 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 882 (3d Cir. 1995)).

Plaintiffs argue that public interests disfavor transfer because "it would be easier" not to transfer; Texas has a larger caseload than Pennsyvania according to plaintiffs' Google search; Pennsylvania "is the home of the controversy" and has an interest in preventing "insurance violations"; and, because plaintiffs believe that Pennsylvania law should govern, a Texas judge and jury should not decide this case. DI 39 ¶ 55. Plaintiffs also invoke Pennsylvania's public policy against enforcing fraudulent or unconscionable contracts and its interest in protecting residents from "insurance schemes, abuse and negligence." DI 39 ¶¶ 30, 41, 50.

We find plaintiffs' public-interest arguments unpersuasive. First, mere convenience is a private-interest factor that is waived under a valid forum selection clause. *See Atl. Marine*, 571 U.S. at 64. Second, plaintiffs' assertion regarding the caseload in Texas is unsupported and does

8

not demonstrate a significant administrative burden. Third, while one of the trailers was transported to Pennsylvania, the other remained in Texas, and all defendants reside in Texas. Thus, Texas has a stronger local interest in the dispute. Fourth, the contract contains a Texas choice-of-law provision, reinforcing Texas' interest. Finally, plaintiffs identify no Pennsylvania public policy that would bar enforcement of a valid forum selection clause.

Accordingly, this is not one of the "unusual cases" where public-interest considerations outweigh enforcement of a forum selection clause. The balance of factors favors transfer.

### c. Scope

Next, we determine whether plaintiffs' claims fall within the scope of the forum selection clause, an inquiry governed by state contract law. *Collins*, 874 F.3d at 180-81. Where, as here, the contract includes a Texas choice-of-law provision, Pennsylvania courts apply Texas law to interpret the clause unless Texas "has no substantial relationship to the parties or the transaction" or doing so would violate Pennsylvania public policy. *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55-56 (3d Cir. 1994) (citing *Smith v. Commonwealth Nat. Bank*, 384 Pa.Super. 65, 557 A.2d 775, 777 (1989)). As we explained, Texas has a substantial relationship to this dispute, and no public policy concerns preclude enforcement. We therefore apply Texas law.

Texas courts interpret forum selection clauses broadly, employing a "common-sense examination" of their scope and presuming that they encompass both contractual and related tort claims. *See Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 438 (Tex. 2017) (holding that a forum selection clause applies to claims that "arise out of or relate to" the contract, even if framed as tort claims because Texas courts avoid "slavish adherence to a contract/tort

9

distinction" and instead look at the factual allegations (quoting *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009)).

The forum selection clause at issue applies to "any judicial or quasi-judicial matters between the Parties." DI 34 at 5. Texas courts have consistently found that similarly broad language extends beyond direct contract claims to "a variety of non-contractual claims" that arise from the contractual relationship. *Collins*, 874 F.3d at 185 (analyzing how much breadth is given to the scope of forum selection clauses in various Texas court rulings). Here, plaintiffs' claims — including fraud, conspiracy, and violations of consumer protection statutes — arise directly from their rental agreements with R2O. The alleged misconduct, such as forgery and deceptive business practices, is fundamentally tied to the agreements' execution and performance. Because all claims originate from the contractual relationship, they fall squarely within the forum selection clause's scope.

Plaintiffs have not shown that any of their claims are independent of the contractual dealings. Even when claims are framed as statutory violations or torts, Texas courts apply forum-selection clauses where the claims are sufficiently related to the contract's subject matter. *See Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988). Because plaintiffs' claims fundamentally concern their business dealings under the rental agreements, the forum selection clause applies.

For those reasons, the contracting parties must litigate this case in Houston, Texas. We next consider the appropriate treatment of the remaining non-signatory parties.

### B. Non-signatories: Federico Arguello; Gabriel Arguello; Jacobo Arguello; Ivan Serna; Adriana Chuey; Vickey Pirela; Arguello Insurance Group; Nautilus; WSS; Kay Campbell; and Malaika Williams

Federico Arguello, Gabriel Arguello, Jacobo Arguello, Ivan Serna, Adriana Chuey, Vickey Pirela, and Arguello Insurance Group have consented to transfer. *See* DI 34. Accordingly, we need not assess whether the forum selection clause applies to them. The remaining non-signatory parties are Nautilus, WSS, Kay Campbell, and Ms. Williams.

A non-signatory may be bound to a forum selection clause under the closely related parties doctrine, a form of equitable estoppel. *In re McGraw-Hill*, 909 F.3d at 59. We first determine if the non-signatories are closely related parties by considering "the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Id.* at 63 (quoting *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015)); *see also Mehta v. Angell Energy*, No. 18-2319, 2019 WL 4750142, at *6 (D.N.J. Sept. 30, 2019) (finding non-signtories closely related and applying the doctrine when "Plaintiff's claims against Non-Signatory Defendants [arose] out of the [contract]"). Second, we determine if "enforcement of the clause . . . against the non-signatory would be foreseeable." *In re McGraw-Hill*, 909 F.3d at 64. "A foreseeability finding . . . require[s] . . . that the actual forum be foreseeable, and that there be some evidentiary basis for such a finding." *Id.* at 65. Finally, we decide whether the dispute between the non-signotries and Mr. Williams falls within the scope of the forum selection clause. *Id.* at 59, 66-69.

For the remaining non-signatory defendants — Nautilus, WSS, and Kay Campbell — we find that they are sufficiently closely related to the rental agreements such that the forum

selection clause applies to them. The insurance policies issued by Nautilus and WSS were directly tied to the rental agreements between Mr. Williams and R2O, which required the trailers to be insured as a condition of the lease. *See* DI 27 at 39, 55 (para. 11, titled "Insurance"). Nautilus, as the insurer, and WSS, as the surplus lines broker facilitating coverage, played an integral role in fulfilling the rental agreements' insurance requirements. Given that they knowingly provided insurance and insurance quotes for the leased food trailers governed by these rental agreements, it was foreseeable that they could be bound by the forum-selection clause requiring litigation in Houston, Texas. *See* DI 32 ¶ 49; DI 27 at 145-161; DI 49-2 at 2; DI 35-1 at 9; DI 32-2. Furthermore, the scope of the forum selection clause, which applies to "any judicial or quasi-judicial matters between the Parties," covers the all the numerous fraud-flavored claims that Mr. Williams brings against these defendants.

Our decision to bind Kay Campbell to the forum selection clause follows from her alleged status as an agent of WSS and Nautilus. Because the claims against her arise solely from the presence of her name on the WSS quote, and WSS itself is bound by the clause, equitable principles dictate that Campbell should also be held to the clause's terms as a closely related party. *See* DI 32 ¶¶ 2, 42.

The closely related parties doctrine also applies to Ms. Williams. Her loss of consortium claim is entirely derivative of Mr. Williams' claims and, therefore, necessarily closely related. *See Mehta*, 2019 WL 4750142, at *6. Ms. Williams reasonably should have foreseen that her husband's contractual obligations could bind her to the forum selection clause for any claims arising from that contract that he husband had signed. *See Mackler v. SME, Inc. USA*, No. 23-4353, 2024 WL 3729872, at *7 (E.D. Pa. Aug. 8, 2024) (finding that a familial relationship can

support a finding that the non-signatory is closely related and that the forum selectin clause was foreseeable). Although she was not a direct party to the agreements, her claim exists only due to Mr. Williams' contractual relationship and the disputes arising from it. *See id*. at *7 ("[D]istrict courts in this Circuit have applied the closely related parties doctrine and enforced forum-selection clauses against non-signatories where their actions and interests "are inextricably intertwined with the contract dispute underlying [the] case."). Because her claim is wholly dependent on the signatories' contractual obligations, enforcing the forum-selection clause is equitable and promotes judicial efficiency, preventing the unnecessary fragmentation of litigation across multiple jurisdictions. And, as explained above for the other non-signatories, the broad scope of the forum selection clause covers her claim.

### III.   Conclusion

For the reasons explained above, pursuant to 28 U.S.C. § 1404(a), it is **ORDERED** that this case is transferred to the United States District Court for the Southern District of Texas, Houston Division.